**DAVID TUNICK, INC., Plaintiff,**

v.

**E.W. KORNFELD and Galerie Kornfeld Und Cie, Defendants.**

**No. 91 Civ. 7027 (DNE).**

United States District Court,
S.D. New York.

Feb. 2, 1993.

Walter, Conston, Alexander & Green, P.C., New York City (William M. Barron, Pedro Morales, of counsel), for plaintiff.

Kantor, Davidoff, Wolfe, Rabbino & Kass, P.C., New York City (Matthew C. Kesten, of counsel), for defendants.

## OPINION & ORDER

EDELSTEIN, District Judge:

This action arises from Mr. E.W. Kornfeld's and Galerie Kornfeld und Cie's (the "defendants") sale of a signed Picasso print to plaintiff, David Tunick, Inc. ("Tunick" or "plaintiff"). Plaintiff alleges that defendants sold Tunick a print of Le Minotourmachie which defendants represented was signed by Pablo Picasso but which, in fact, bears a forged signature. As a result, plaintiff has brought this action alleging fraud, misrepresentation, breach of the duties of honesty and good faith in fair dealing, and breach of fiduciary duty. Defendants have denied these allegations and, on January 15, 1992, they filed a motion seeking either dismissal of this action, summary judgment or judgment on the pleadings.

## DISCUSSION

I. *Defendants' Motion to Dismiss the Amended Complaint*

   a. Personal Jurisdiction Over Defendant E.W. Kornfeld

Where, as here, a plaintiff invokes a federal district court's diversity jurisdiction, personal jurisdiction over a defendant is determined by reference to the jurisdictional statutes of the state in which the district court sits. *See Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir.1984);

*Painewebber Inc. v. The Westgate Group*, 748 F.Supp. 115, 118 (S.D.N.Y.1990). Thus, this Court must look to the jurisdictional statutes of the State of New York in order to determine whether Mr. Kornfeld is subject to this Court's jurisdiction.

When a question of personal jurisdiction is decided without a full evidentiary hearing, plaintiff need make only a *prima facie* showing that jurisdiction exists. *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981). However, where there has been discovery on issues relating to jurisdiction, plaintiff is required to prove by a preponderance of the evidence the existence of contacts with the relevant forum sufficient to support jurisdiction. *See Grill v. Walt Disney Co.*, 683 F.Supp. 66, 67–68 (S.D.N.Y.1988); *see also Volkswagenwerk*, 751 F.2d at 120. At a pre-motion conference held on December 19, 1991, this Court stayed discovery in this action pending consideration of dispositive motions. This stay was memorialized in a January 17, 1992 scheduling order which was signed by the Honorable Robert Sweet acting as Part I Judge. In a Memorandum & Order dated January 5, 1993, this Court permitted discovery to proceed on the issue of this Court's jurisdiction.[1] Thus, plaintiff is required to demonstrate defendant's contacts with New York by a preponderance of the evidence in order for this Court to find that it has personal jurisdiction over Mr. Kornfeld.

On January 14, 1993 and January 15, 1993 this Court held a hearing (the "Jurisdiction Hearing") to determine whether defendant E.W. Kornfeld is subject to personal jurisdiction in New York under New York Civil Practice Law and Rules ("CPLR") § 302(a)(1) or § 302(a)(3). Plaintiff contends that this Court has jurisdiction over Mr. Kornfeld pursuant to CPLR § 302(a)(3). In relevant part, that Section of the New York long arm statute empowers a court to exercise jurisdiction over a non-resident who

   commits a tortious act without the state causing injury to person or property

---

1. By an Order dated January 15, 1993, this Court lifted the stay of discovery.

within the state ... if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state *and* derives substantial revenue from interstate or international commerce.

CPLR § 302(a)(3) (emphasis added); *see Ronar, Inc. v. Wallace*, 649 F.Supp. 310, 316 (S.D.N.Y.1986); *Trafalgar Capital Corp. v. Oil Producers Equip.*, 555 F.Supp. 305, 310 (S.D.N.Y.1983).

The Court finds that plaintiff has demonstrated that Mr. E.W. Kornfeld is subject to jurisdiction under CPLR § 302(a)(3).[2] Construing the record in the light most favorable to plaintiff, *see Pentel of America, Ltd. v. Sanford Corp.*, 1992 WL 190145, *1, 1992 U.S.Dist.LEXIS 11136, *7–*8 (S.D.N.Y. July 28, 1992), plaintiff has made a *prima facie* showing that Mr. Kornfeld committed a tortious act outside New York that caused injury to plaintiff inside New York. In addition, Tunick has satisfied, by a preponderance of the evidence, subsections (i) and (ii) of CPLR § 302(a)(3), only one of which is necessary to a finding of personal jurisdiction.

With regard to CPLR § 302(a)(3)(i), the Jurisdiction Hearing demonstrated that Mr. Kornfeld regularly does and solicits business in New York. Mr. Kornfeld has purchased works of art for his personal collection from New York art galleries and collectors. The sale of paintings to New York collectors and galleries has earned Mr. Kornfeld substantial revenues. Furthermore, Mr. Kornfeld has engaged in a persistent course of conduct in New York, not only through the above activities, but also by engaging in substantial non-business activities in New York. For example, several of the paintings that Mr. Kornfeld owns have been, or currently are being, displayed in museums located in or around New York City. Thus, plaintiff has satisfied CPLR § 302(a)(3)(i).

Plaintiff has also satisfied the requirements of CPLR § 302(a)(3)(ii). If it is shown at trial that Mr. Kornfeld engaged in fraudulent practices, it would be reasonable to infer that he knew, or should have known, that his actions would have consequences in New York State; after all, the print of Le Minotourmachie which is the subject of this dispute was sold to a New York entity with which Mr. Kornfeld had a pre-existing relationship. Furthermore, Mr. Kornfeld's testimony at the Jurisdiction Hearing demonstrated that he personally derives substantial revenue from international commerce via transactions related to his personal art collection. As such, the Court finds that Mr. Kornfeld is subject to jurisdiction in New York pursuant to CPLR § 302(a)(3).

b. Forum Non Conveniens

■ Defendants next argue for dismissal of this action based upon the doctrine of forum non conveniens. Defendants aver that this Court should instruct plaintiff to bring suit in Switzerland. The doctrine of forum non conveniens allows a federal district court to decline jurisdiction when the court is authorized by statute to assert jurisdiction. The "central purpose of a forum non conveniens inquiry is to determine where trial will be most convenient and will serve the ends of justice." *Maganlal & Co. v. M.G. Chem. Co.*, 942 F.2d 164, 167 (2d Cir.1991).

■ The Supreme Court has emphasized that district courts must be flexible in engaging in a forum non conveniens inquiry, and consequently there are no specific circumstances that require either a grant or denial of a motion to dismiss on these grounds. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249, 102 S.Ct. 252, 262, 70 L.Ed.2d 419 (1981); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947); *see also Andros Compania Maritima S.A. v. Intertanker Ltd.*, 714 F.Supp. 669, 677 (S.D.N.Y.1989) (flexibility required when district court makes forum non conveniens determination). In

---

**2.** Because this Court finds that there is jurisdiction over Mr. Kornfeld pursuant to CPLR § 302(a)(3), plaintiff's claim of jurisdiction under CPLR § 302(a)(1) will not be discussed.

order to determine whether an action should be dismissed under the doctrine of forum non conveniens, a court must weigh the "private" and "public" factors enumerated by the Supreme Court in *Gulf Oil.* *See Gulf Oil,* 330 U.S. at 508–09, 67 S.Ct. at 843; *see also Piper Aircraft,* 454 U.S. at 241 n. 6, 102 S.Ct. at 258 n. 6. The private factors that the Court must consider include: relative ease of access to sources of proof; availability of compulsory process for procuring the attendance of unwilling witnesses and the cost of obtaining the attendance of willing witnesses; and all other practical considerations that make trial of a case easy, expeditious, and inexpensive. *Id.* The public factors that must be considered include: administrative difficulty flowing from court congestion; policy concerns favoring having local controversies decided locally; and the propriety of imposing jury duty upon a community that has little or no connection with a litigation. *Id.*

■ Unless the balance of the *Gulf Oil* factors weighs "strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil,* 330 U.S. at 508, 67 S.Ct. at 843. Indeed, there is "ordinarily a strong presumption in favor of plaintiff's choice of forum." *Maganlal,* 942 F.2d at 167. A citizen's or resident's choice of forum deserves more deference than that of a foreign plaintiff. *Piper Aircraft,* 454 U.S. at 255–56, 102 S.Ct. at 265–66. The always strong presumption in favor of a plaintiff's choice of forum is fortified where an American plaintiff brings suit against a foreign entity and the alternative forum is foreign. *See Olympic Corp. v. Societe Generale,* 462 F.2d 376, 378 (2d Cir.1972); *Mutual Export Corp. v. Westpac Banking Corp.,* 742 F.Supp. 161, 163 (S.D.N.Y.1990); *American Special Risk Ins. Co. v. Delta Am. Re Ins. Co.,* 634 F.Supp. 112, 116 (S.D.N.Y. 1986).

■ Examining the *Gulf Oil* factors, it is clear that dismissal is not appropriate in this case. Plaintiff, the print which is the subject of this dispute, and several experts that have deemed the Picasso signature a

forgery, are located in New York. A conversation in which Mr. Kornfeld allegedly admitted wrongdoing occurred in New York and was purportedly witnessed by persons who reside in New York. While documentary evidence and certain witnesses are located in Switzerland, this alone does not outweigh the strong nexus between this dispute and New York. In addition, any materials or witnesses located abroad can easily be brought to New York. Finally, while this case may require the Court to interpret foreign law, this fact alone is insufficient to support dismissal. *See Manu Int'l. S.A. v. Avon Prod.,* 641 F.2d 62, 66 (2d Cir.1981); *Mutual Export,* 742 F.Supp. at 165. Thus, the Court finds that this action should not be dismissed on the grounds of forum non conveniens.

### c. Laches

■ The "existence of laches is a question primarily addressed to the discretion of the trial court." *Gardner v. Panama R.R. Co.,* 342 U.S. 29, 30–31, 72 S.Ct. 12, 13, 96 L.Ed. 31 (1951) (*per curiam*); *see also King v. Innovative Books,* 976 F.2d 824, 832 (2d Cir.1992) ("issue of laches is committed to the discretion of the district court"); *Dickey v. Alcoa S.S. Co.,* 641 F.2d 81, 82 (2d Cir.1981) (same). A party asserting the equitable defense of laches must establish "both plaintiff's unreasonable lack of diligence under the circumstances in initiating an action, as well as prejudice from such a delay." *King,* 976 F.2d 824, 832: *see Southside Fair Hous. Comm. v. City of New York,* 928 F.2d 1336, 1354 (2d Cir.1991). Thus, in contrast to a statute of limitations defense, the defense of laches subsists only when the Court finds that a plaintiff has unreasonably delayed in initiating suit and, as a result of this delay, the defendant is substantially prejudiced. *See Robins Island Preservation Fund, Inc. v. Southold Dev. Corp.,* 959 F.2d 409, 423 (2d Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 603, 121 L.Ed.2d 539 (1992).

■ As an initial matter, the Court finds that plaintiff did not unreasonably delay the filing of suit. Defendant notes that sixteen months passed between the

date of the auction at which Tunick purchased Le Minotourmachie and the filing of this suit. While this is true, the Court does not view this sixteen month "delay" as unreasonable: The print was in transit or remained in Switzerland for more than a month prior to delivery in New York and plaintiff's discovery of the alleged forgery occurred contemporaneously with the filing of this suit. Moreover, defendants have not suffered any prejudice as a result of this delay. If, as defendants assert, the print was on consignment to Galerie Kornfeld und Cie, an action still lies against the consignor if it is demonstrated that the signature on the print is forged. If the prejudice to which defendants intend to point is the fact that it will be difficult for defendants to re-sell the print now that the authenticity of the signature is in doubt, the sixteen month period between the sale of the print and the filing of suit has little or no bearing on this potential difficulty. Therefore, this Court finds that the equitable defense of laches is unavailable to defendants and the motion to dismiss the amended complaint on this ground should be denied.

### d. The Auction Claims

Defendants argue that the amended complaint should be dismissed because the "terms and conditions" that governed the auction at which plaintiff purchased the signed print of Le Minotourmachie bar the instant action. First, defendants claim that the terms and conditions specify that the court of Berne, Switzerland has exclusive jurisdiction over actions arising from the auction. Second, defendants contend that the terms and conditions require any "protest" arising from the auction to be made within four weeks of the auction.

The correct translation of foreign language versions of the purported forum selection clause is a matter of some dispute. The german-language version of the terms and conditions apparently contains statements that are different from the english-language version that defendants provided to plaintiff. The english-language version of the terms and conditions does not state that the court in Berne has exclusive juris-diction; rather, it states that "[i]f a dispute arises, the Court in Berne is competent for both parties." The Court reads this clause as an agreement that the parties *may* seek adjudication of any dispute in Berne, not that they *must* do so. As this Court held in *Heyco, Inc. v. Heyman,* 636 F.Supp. 1545, 1547–48 (S.D.N.Y.1986), a clause such as the one at issue here "merely allows plaintiff the option of another forum in which to sue" because it does not, by its terms, provide for exclusive jurisdiction in another court. This reading is bolstered by the contents of a letter submitted to this Court by plaintiff that defendants have not attempted to refute. This letter indicates that "the court in Berne ... [found] the forum clause in the Kornfeld auction catalog [to be] invalid and unenforceable." Letter from William M. Barron, Counsel for Plaintiff, to Judge David N. Edelstein (Dec. 22, 1992) (on file in the Southern District of New York). Finally, given that defendants drafted the relevant clause, any ambiguity must be resolved in favor of plaintiff. *See, e.g., Keaty v. Freeport Indonesia, Inc.,* 503 F.2d 955, 957 (5th Cir. 1974) (interpretation favored that operates against drafter of ambiguous clause). Thus, the forum clause contained in the terms and conditions governing the auction does not support defendants' motion to dismiss.

Similarly, defendants' argument that this case should be dismissed on the basis of the four-week limitation period for protests contained in the terms and conditions is unavailing. As a matter of public policy, contractual provisions that purport to shorten otherwise applicable limitations periods will be enforced only if reasonable. *See Fireman's Fund Ins. Co. v. Warehouse No. 1, Inc.,* 1989 U.S.Dist.LEXIS 13507, *11 (S.D.N.Y.1989) (The "law allows parties to provide for reasonable shorter periods of limitation by agreement, but such agreements are strictly construed, and the parties' intention to provide shorter than usual limitations period must be clear."); *Brink's Inc. v. City of New York,* 528 F.Supp. 1084, 1086 (S.D.N.Y.1981) (emphasis added) ("[A]n

agreement which modifies the Statute of Limitations by specifying a shorter, *but reasonable*, period within which to commence an action is enforceable."); *Raymond Int'l, Inc. v. City of New York*, 511 F.Supp. 773, 776 (S.D.N.Y.1981) ("[I]n enforcing such time limitation agreements, the shortened period must be reasonable and its terms will be strictly construed."). Because there exists ambiguity as to the applicability and proper construction of the purported four-week limitation period, defendants' motion to dismiss based upon this ground is unavailing.

### e. Personal Liability of E.W. Kornfeld For The Auction Claims

Defendants next contend that the amended complaint against Mr. Kornfeld must be dismissed because, under Section 604 of the Swiss Code of Obligations, an unlimited partner of a limited partnership cannot be sued personally for a debt incurred by the firm until the partnership is dissolved or until after an unsuccessful effort to execute a judgment against the partnership. This argument misses the mark. Plaintiff has sued Mr. Kornfeld not in his capacity as a partner of Galerie Kornfeld und Cie, but rather individually for torts that plaintiff claims Mr. Kornfeld committed in his individual capacity. Thus, defendants' argument for dismissal as against Mr. Kornfeld pursuant to Section 604 of the Swiss Code of Obligations is unavailing.

■■■■ Moreover, the laws of New York State, rather than those of Switzerland, must be applied to this action. In cases in which jurisdiction depends on diversity of citizenship, a federal court must follow the conflict of laws rules prevailing in the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Cargill, Inc. v. Charles Kowsky Resources, Inc.*, 949 F.2d 51, 55 (2d Cir.1991). New York utilizes an interest analysis approach to choice of law problems. *See Cargill*, 949 F.2d at 55; *William J. Conlon & Sons, Inc. v. John Wanamaker, Philadelphia*, 583 F.Supp. 212, 213 (E.D.N.Y.1984). Under New York conflicts principles, "the law of the jurisdiction having the greatest interest in the litigation will be applied and ... the facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict." *Intercontinental Planning, Ltd. v. Daystrom, Inc.*, 24 N.Y.2d 372, 300 N.Y.S.2d 817, 824, 248 N.E.2d 576, 580 (1969) (citations omitted); *see J. Zeevi and Sons, Ltd. v. Grindlays Bank (Uganda) Ltd.*, 37 N.Y.2d 220, 371 N.Y.S.2d 892, 898, 333 N.E.2d 168, 172 (1975); *Auten v. Auten*, 308 N.Y. 155, 161, 124 N.E.2d 99 (1954); *see also William J. Conlon & Sons*, 583 F.Supp. at 213. The Court must evaluate the nexus between each jurisdiction and the controversy in light of the policies and purposes to be vindicated by the conflicting laws. *See id.* The Court will apply the laws of the jurisdiction which has the greatest interest in, and is most intimately concerned with, the outcome of a given litigation. *See J. Zeevi and Sons*, 371 N.Y.S.2d at 898, 333 N.E.2d at 172. Thus, under New York conflicts principles, controlling effect is accorded to the law of the jurisdiction " 'which has the greatest concern with, or interest in, the specific issue raised in the litigation.' " *Intercontinental Monetary Corp. v. Performance Guarantees, Inc.*, 705 F.Supp. 144, 147 (S.D.N.Y.1989) (quoting *Neumeier v. Kuehner*, 31 N.Y.2d 121, 335 N.Y.S.2d 64, 69, 286 N.E.2d 454, 457 (1972)).

■■■■ While the case at bar incorporates issues relating to the law of contracts, agency and corporations, its primary focus is on tort law. It is alleged, *inter alia,* that Mr. Kornfeld and Galerie Kornfeld und Cie defrauded plaintiff by deliberately misleading him as to the authenticity of a signature on a Picasso print. Further, it is alleged that Mr. Kornfeld and Galerie Kornfeld und Cie regularly solicit business in New York, exhibit works of art in museums located in New York, purchase works of art in New York, and accept for sale on consignment works of art owned by New York residents. Indeed, at the Jurisdictional Hearing, Mr. Kornfeld admitted that Galerie Kornfeld und Cie solicits business from major art galleries and auction houses in New York City.

A primary purpose of the New York tort law regime is to deter wrongful conduct while concurrently ensuring that New York residents who are the victims of such conduct are made whole. New York has an extremely strong interest in assuring that victims of fraud are afforded adequate redress. The Swiss interest in this litigation is attenuated at best. While a Swiss citizen and partnership are defendants in this action, the Swiss interest lies only in seeing that its nationals are not deprived of a fair hearing on the merits. Clearly, a hearing in a United States federal district court adequately addresses this interest. As such, under New York conflicts principles this Court must employ New York law in deciding this case.

## II. *Defendants' Motion For Summary Judgment or Judgment on the Pleadings With Respect to Plaintiff's Fifth Claim For Relief—The Joint Venture Claim*

A party seeking summary judgment must demonstrate "that there is no genuine issue as to any material fact" such that it "is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). "It is well settled that a court should grant a motion for summary judgment only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact." *Cable Science Corp. v. Rochdale Village, Inc.*, 920 F.2d 147, 151 (2d Cir.1990); *see United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962); *Owens v. New York City Hous. Auth.*, 934 F.2d 405, 408 (2d Cir.), *cert. denied*, — U.S. ——, 112 S.Ct. 431, 116 L.Ed.2d 451 (1991); *see also Lendino v. Trans Union Credit Info. Co.*, 970 F.2d 1110, 1112 (2d Cir.1992) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970)) ("It has long been the rule that 'on summary judgment the inferences to be drawn from the underlying facts contained in [the moving party's] materials must be viewed in the light most favorable to the party opposing the motion.'"). The Supreme Court has noted that whether an issue is genuine and material for purposes of summary judgment depends on "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). The moving party has the initial burden of establishing the absence of a genuine issue of material fact. *See Adickes*, 398 U.S. at 157, 90 S.Ct. at 1608.

"In considering [a] motion [for summary judgment], the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight*, 804 F.2d at 11 (citations omitted). Moreover, the Second Circuit has indicated that where, as here, the parties have not had the benefit of extensive discovery at the time a motion for summary judgment is made, such a motion should seldom be granted. *See, e.g., Schlesinger Inv. Partnership v. Fluor Corp.*, 671 F.2d 739, 743 (2d Cir.1982) ("[S]ummary judgment should rarely be granted ... when the plaintiff has not had an opportunity to resort to discovery procedures."); *see also Grant Thornton v. Syracuse Sav. Bank*, 961 F.2d 1042, 1046 (2d Cir.1992); *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980).

Summary judgment on plaintiff's fifth claim for relief is inappropriate. Because discovery has not yet occurred, plaintiff has not had the opportunity to explore the factual underpinnings of this claim. Moreover, material issues of fact abound. What, if any, joint venture agreement was entered into by the parties is unclear. This Court cannot, on the basis of the record currently before it, conclude that this claim either has or lacks merit. Summary judgment therefore must be denied.

Moreover, judgment on the pleadings with respect to this claim is similarly inappropriate. Rule 12(c) of the Federal Rules

of Civil Procedure provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). A Rule 12(c) motion "provide[s] a means of disposing of cases when the material facts are not in dispute and a judgment on the merits can be achieved by focusing on the content of the pleadings and any facts of which the court will take judicial notice." 5A Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1367, at 509–10 (1990) (hereinafter "Wright & Miller"). In order for the Court to grant a Rule 12(c) motion, the movant must demonstrate that no issue of material fact exists requiring submission to a jury. *See United States v. New Silver Palace Restaurant, Inc.*, 810 F.Supp. 440, 441 (E.D.N.Y.1992); *see also Wright & Miller* § 1367, at 517–18 (Federal judges are hesitant "to grant a motion under Rule 12(c) unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law."). In evaluating a motion for judgment on the pleadings, "a court must accept as true all well-pleaded facts alleged in the complaint and refrain from dismissing the action unless the non-movant can prove no set of facts that would entitle it to relief." *See McNeill v. New York City Hous. Auth.*, 719 F.Supp. 233, 256 (S.D.N.Y.1989).

Under this test it is clear that the amended complaint is sufficient to withstand defendants' motion for judgment on the pleadings. Plaintiff has delineated a claim and alleged sufficient facts to state a claim on which relief could be granted. As such, judgment on the pleadings is inappropriate.

### CONCLUSION

Defendants' motion to dismiss the amended complaint is DENIED. Defendants' motion for summary judgment and/or for judgment on the pleadings is DENIED.

SO ORDERED.